Commonwealth ex rel. Gill *v.* Smith and Massachusetts Bonding and Insurance Company, Appellant.

32

Argued March 13, 1929.

Before Porter, P. J., Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*W. J. MacIntosh,* and with him *Walter B. Hays* and *Morgan, Lewis & Bockius,* for appellant.—Money deposited by surety on a recognizance with the clerk of the court as additional security is not received by the clerk in his official capacity within the meaning of the phrase as employed in an official bond: Commonwealth v. Fortini, 27 D. R. 521; Commonwealth v. Allentown Trust Company, 3 D. & C. 641; State ex rel. Cook v. Fidelity and Deposit Company of Maryland, 112 S. E. 319; Snyder v. Gross, 95 N. W. 636; Elliott et al. v. Commonwealth, 138 S. W. 300.

*Harvey A. Gross,* for appellee, cited: Gill's Petition, 38 York Legal Record 137; 6 D. & C. 662; State v. Watson, 38 Arkansas 96; Walters-Cates v. Baker, 84 N. W. 603; Power County v. Fidelity & Deposit County of Maryland et al., 260 Pacific Reporter 152.

OPINION BY LINN, J., April 10, 1929:

This is an appeal by a surety company, one of two defendants, from judgment for want of a sufficient affidavit of defense entered against it and the other defendant, Smith, in a suit brought in the name of the Commonwealth, at the relation of John Gill, to recover on the official bond of defendants given pursuant to statute for the faithful performance by Smith of his duties as clerk of the court of quarter sessions of York County. There is no dispute of fact, the single question being whether the bond renders the surety company liable for the clerk's failure to pay to Gill a sum deposited in court in circumstances to be stated; the answer to that question depends on whether the clerk received the money in his official capacity.

Smith was the duly qualified clerk of the court. The condition of the bond was that if "Smith shall and does faithfully execute the duties of said office, and shall and does well and truly account for, and pay according to law, all moneys which shall be received by him in his official capacity ...... then this obligation to be void or else to be and remain in full force and virtue."

In 1922, at the October term of the court, inter alia, three men were indicted for assault and battery, aggravated assault and battery and felonious assault; for their appearance when required for trial, each was held in $500 bail, and in open court offered as surety on their recognizances, John Gill, the relator in the present suit. Gill was a non-resident of York County, for which reason the court declined to accept him, "unless" as averred in the statement of claim, "additional cash money ($500 in each case) was deposited with the said Purd R. Smith, clerk of said court." To comply with that decision of the court, Gill, in the language of the 7th paragraph of the statement, (admitted by the affidavit of defense), "then and there did deposit with said Purd R. Smith, clerk of the court of quarter sessions ...... the sum of $1,500 in order to qualify him as surety on the said recognizances ...... and the said John Gill was then and there accepted by the said court of quarter sessions of the Peace as surety on the said recognizances ......" In due course, the criminal trials were disposed of without default, whereupon the $1,500 deposited by Gill, less the clerk's fees, became payable to him. In September, 1924, he filed his petition in the quarter sessions, setting forth the facts outlined above and asking an order on Smith to pay to him the deposit, and December 29, 1924, such an order was made, requiring him to pay the amount to Gill less "the legal commissions which the act of assembly allows him for its custody;" this proceeding is re-

ported as Gill's Petition, 6 D. & C. Reports 662. The relator now avers that Smith has not paid the amount due as ordered by the court, and that the surety company is therefore liable on its bond.

Appellant's single contention is that the clerk received the money in an individual and not in an official capacity, with the result that the transaction is not within the provisions of the bond; in other words, that the court had no power to order the clerk in his official capacity to take charge of the deposit. The argument is without foundation.

The court of quarter sessions is of ancient origin, continued by all our constitutions, and provided for in the present Constitution by section 1 of Article V; " . . . . . . but the jurisdiction of the court is not defined therein. Its jurisdiction is fixed by the common law and the statutes declaring its powers;" Com. v. Andrews, 24 Pa. Superior Ct. 571, 573. Among them, is the power to admit to bail and take recognizances. The exercise of that power involves the right and the duty of the court to satisfy itself that adequate security in the circumstances of any given case is obtained. In the performance of that duty, if the court finds it necessary to require a proposed surety to pay into court a specified sum, not in lieu of bail for the appearance of defendants, but as collateral to the surety's undertaking as bail if accepted, the power to require it is undoubted. It is within its general jurisdiction as to a matter properly before the court for determination. Such was the transaction disclosed by this record.

"The power of courts of record to require security from persons subject to their order where there are interests demanding this protection is an inherent one, essential to the due administration of right and justice which the constitution of the state has placed beyond the possibility of legislative interference . . . . . . The power is one of great importance and responsibility.

Its proper exercise demands that the court should be satisfied not only that the proposed surety is the owner of means sufficient, beyond all his liabilities, to respond to the obligation which he offers to incur, but that he and his property are within reach of the process of the court ....... The purpose of demanding security is not that a mere form may be complied with. It is to secure ......" PENROSE, J., In re A. Banking etc. Co., 4 D. R. 757.

The next question is, what was the court to do with the money which it so ordered to be deposited? The practice is old. The answer to that question may be quoted from an early opinion in which a surety was held liable on his bond for the failure of a prothonotary to pay over money deposited with him, notwithstanding that it was contended "that the court had no power to order the money to be paid into court, and 2, that the money was paid without a rule or any authority from the court." In that case it was said "It remains to be observed that the money so paid must, from the necessity of the case, be received by the prothonotary, who is the officer of the court, and who alone can be its depository. Unless he receives it, it must be received by the court itself, which cannot be tolerated. [See similar language of HARLAN, J., in Howard v. U. S., 184 U. S. 676, 683]. And, in accordance with this, is the invariable practice. In some counties, where it is convenient and safe, the custody of money paid is regulated by rules of court, which require that the money be deposited in the name of the prothonotary in some designated bank, subject to his order, countersigned by the court and allowed by them. But this practice, it is very obvious, cannot prevail in all counties for want of a convenient place to keep the money; and hence it follows that the prothonotary must be the depository in his official capacity. It is one of the duties of his office, for which he and his bail must be liable; for the condition of his bond is, that

he will well and truly, and in all things, execute and perform the duties of his office'': Deckert's Appeal, 5 W. & S. 342. While that decision is sufficient to support our judgment, additional authorities are not wanting: see Watson et al. v. Smith, 26 Pa. 395; Com. for use v. Walter, 99 Pa. 181; Howard v. United States, 184 U. S. 676; U. S. v. Powell, 14 Wall. 493; In re Finks, 41 Fed. 383; State ex rel. v. Fidelity & Deposit Co., 112 S. E. 319.

The clerk was an officer of the court; the statute, provides that he ''shall faithfully perform under the direction of the court all the duties appertaining to his office'' (1834 P. L. 333, par. 45). In defendant's argument it is said that the demand for cash ''may have been made by the clerk himself and without judicial action or interference of any kind;'' the record does not support the statement, but in any event, the court being in session, judicial action is presumed: ''But the record shows it was taken in term time, and we presume it to have been the act of the court—the clerk being the instrument only ...... The court of quarter sessions had power to admit to bail; the recognizance taken was their act, and not the clerk's, and therefore it was valid and not void'': Bodine v. Com., 24 Pa. 69, 71. Moreover, the Act of March 14, 1877, P. L. 3, authorizing the clerk of the quarter sessions to take bail and recognizances limits his authority to cases ''whenever the law judge or judges ...... shall be absent from the county seat, or shall be unable on account of sickness or other cause to attend to the duties of their office.'' Something is also said by appellant to the effect that there was no authority when this money was paid, to take cash bail, that the Act of May 12, 1921, P. L. 548, did not authorize what was done. But, as has appeared, this was not a transaction under the Act of 1921, nor was it taking cash bail or cash in lieu of bail.

As the deposit with the clerk was required by the

38

court in the exercise of inherent power essential to the adequate administration of justice, in a matter within its jurisdiction, it was received by the clerk in his official capacity and is entitled to the protection of his bond.

Judgment affirmed.